UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - :
PAUL HARDEN,                            :
                                        :
          Petitioner,                   : 07 Civ. 4592 (LTS)(JCF)
                                        :
          -against-                     :      REPORT AND
                                        :      RECOMMENDATION
DARWIN LaCLAIRE,                        :
                                        :
          Respondent.                   :
- - - - - - - - - - - - - - - - - - - - :
TO THE HONORABLE LAURA T. SWAIN, U.S.D.J.:

     Paul Harden brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for robbery.  In his petition, Mr. Harden contends that (1) the evidence of his guilt was insufficient to support his conviction; (2) his Due Process and Confrontation Clause rights were violated by the trial court's failure to have a witness testify through an interpreter; (3) the trial court erred in admitting testimony regarding the victim's prior identification of the petitioner; (4) he was denied his right to a speedy trial; (5) his trial counsel was ineffective for failing to make use of a Robbery Complaint Worksheet; and (6) his appellate counsel was ineffective.  In addition, Mr. Harden has moved for a stay of these proceedings and to amend his petition.  For the reasons that follow, I recommend that both of the petitioner's motions and his petition be denied.

1

Background

   A. Arrest

   At about 3:45 a.m. on January 11, 2000, Anjum Yaqub, a taxi driver, dropped off an elderly woman at 506 West 148th Street in Manhattan.  (Tr. at 585-86).[1]  As Mr. Yaqub returned to his cab after walking the passenger to her door, he was accosted by three men who threw him onto the trunk of the cab.  (Tr. at 586-87, 617, 624-25).  According to Mr. Yaqub, one man -- whom he later identified as Mr. Harden -- held a black-handled kitchen knife to Mr. Yaqub's stomach and put a hand over his mouth, commanding him not to cry for help.  (Tr. at 587, 620).  Another man punched Mr. Yaqub in the stomach and pointed a gun at him.  (Tr. at 587, 620). The third assailant took $300 from Mr. Yaqub's shirt pocket.  (Tr. at 587-88).  The three men then fled into a neighboring building. (Tr. at 590, 625-26).

   Mr. Yaqub called 911, and the police arrived shortly thereafter.  (Tr. at 590, 592, 606).  He told the police that he had been robbed by three men, two black and one Hispanic, who had fled into 510-512 West 148th Street.  (Tr. at 469-70, 500-01, 541). He described the black man with the knife as wearing an "all black coat."  (Tr. at 542).  Two officers searched the apartment building into which the men had fled but found nothing.  (Tr. at 491-92, 500, 554).  While the officers were conducting their search inside,

_____

   [1]"Tr." refers to the transcript of the petitioner's trial.

2

another officer who had arrived out front observed a man wearing a blue and red jacket and sunglasses -- which the officer found "kind of unusual" for 4:00 a.m. -- exit 518 West 148th Street and walk briskly down West 148th Street away from the crime scene. (Tr. at 400-03, 424-25).

The officers, together with the victim, then canvassed the neighborhood in a patrol car. (Tr. at 403-04, 448). Mr. Yaqub saw a man on Broadway between 147th and 148th Streets wearing a jacket similar to the one worn by his assailant, and the police car followed the man onto 147th Street. (Tr. at 593, 607). As he came closer, Mr. Yaqub said, "I think that's the guy, that's the guy." (Tr. at 663). The officers stopped the petitioner, and Mr. Yaqub approached within five to ten feet of him and identified him as one of the assailants. (Tr. at 450-51, 596-97). The officers frisked the petitioner, recovering a box cutter from his front pocket. Upon seeing the box cutter, Mr. Yaqub said "[T]hat's not it. He has a knife." (Tr. at 451, 599). A further search of the petitioner revealed that he was carrying a black-handled kitchen steak knife in his back pocket, and Mr. Yaqub said, "[T]hat's the knife, that's the knife." (Tr. at 452-53, 600, 664). No money was found on the petitioner. (Tr. at 454).

At the stationhouse, and later at the District Attorney's office, Mr. Harden gave conflicting accounts of his activities that night. He initially told police that he was coming out of a

3

building on West 147th Street (Tr. at 416-17), but then later said that he was visiting his girlfriend at 518 West 148th Street, Apartment 2A. (Tr. at 418-21). The police later discovered that no such apartment existed. (Tr. at 482-83). The petitioner also told police that he was on his way to work at the time he was stopped, but admitted that his shift as a messenger started at 9:00 a.m. (Tr. at 420). At the District Attorney's office, he changed his story, stating that he had visited a prostitute on 145th Street around midnight, then hung out with some acquaintances in the same area before walking toward his apartment on 132nd Street, at which time he was stopped by the police. (Tr. at 523-24).

B. Trial and Sentencing

The petitioner's trial was held on January 11 and January 18, 2001. Mr. Yaqub was the prosecution's main witness. Although the court characterized Mr. Yaqub's English as "not very good," he testified without the aid of an interpreter. (Tr. at 659). Apparently, neither side requested that one be provided. On direct examination, Mr. Yaqub was asked to point out his assailant, but he identified a spectator rather than Mr. Harden. (Tr. at 589). He later backtracked, and the prosecution sought to introduce testimony regarding his prior identification of Mr. Harden on the basis of his lack of recollection of what the assailant looked like. (Tr. at 594-95, 612, 656-57). Mr. Yaqub testified that he was "a hundred percent" sure that the man stopped on 147th street

4

was the man who attacked him.  (Tr. at 596-97).  Over an objection by defense counsel, the court allowed a police officer to testify as to the prior identification.  (Tr. at 657-60).

Mr. Yaqub also testified that his assailant wore a black coat with red stripes.  (Tr. at 592-93).  However, the police officer who took his initial statement had noted that he said his assailant wore all black -- a black coat, black pants, and black shoes.  (Tr. at 555).  Meanwhile, photos of the petitioner taken at Central Booking after his arrest and introduced at trial showed the petitioner wearing a red, white, and blue jacket and pants with blue and white stripes along the legs.  (Tr. at 581-82).  An officer who arrested the petitioner and the attorney who represented him at his arraignment each confirmed that this is what he had been wearing that night.  (Tr. at 402, 496).  In addition, the petitioner had a mustache, a beard, and a prominent bump on his forehead, none of which had been mentioned by Mr. Yaqub.  (Tr. at 431, 464-65, 680).

On January 19, 2001, the petitioner was found guilty of two counts of first-degree robbery and one count of second-degree robbery.  (Tr. at 810-11).  On April 25, 2001 he was sentenced as a persistent felony offender to twenty years to life imprisonment. (S. at 11).[2]

---

[2] "S." refers to the transcript of the sentencing on April 25, 2001.

C. Subsequent Proceedings

The petitioner appealed his conviction in March 2003, asserting that (1) there was insufficient evidence to support his conviction and that the verdict was against the weight of evidence; (2) the trial court should have provided Mr. Yaqub with an interpreter while he was testifying; (3) the court erred in admitting testimony describing Mr. Yaqub's pre-trial identification of the petitioner; (4) the court erred in denying the petitioner's motion to dismiss the indictment on speedy trial grounds; and (5) trial counsel was ineffective for failing to cross-examine Mr. Yaqub using a Robbery Complaint Worksheet filled out shortly after the incident. (Brief for Defendant-Appellant Paul Harden ("Pet. App. Br."), attached as Exh. A to Declaration of Lisa Fleischmann dated Sept. 20, 2007 ("Fleischmann Decl.")).[3]

On April 1, 2004, the Appellate Division, First Department, unanimously affirmed the judgment of conviction. People v. Harden, 6 A.D.3d 181, 778 N.Y.S.2d 7 (1st Dep't 2004). The court held that the evidence of the petitioner's guilt was legally sufficient and that the verdict was not against the weight of evidence. The court next ruled that the speedy trial claim was unreviewable because the

---

[3] The claim regarding ineffective assistance of trial counsel was added in a second version of Mr. Harden's appellate brief and was considered by the Appellate Division. (Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Memo.") at 9). The table of contents for that brief is attached to the petition. (Addendum to Petition at 4th unnumbered page).

record did not contain transcripts of two court proceedings relevant to this claim. The court went on to hold that delays due to Mr. Yaqub's absence from the country were the result of an exceptional circumstance that tolled the running of the speedy trial clock under New York Criminal Procedure Law ("CPL") § 30.30(4)(g).  Id. at 182, 778 N.Y.S.2d at 8.  The Appellate Division also found that the trial court had properly admitted the victim's out-of-court identification of the petitioner because "[t]he victim's answer to the court's question about whether he had a present recollection of the knife-wielding robber permits the inference that the victim was unable to make an in-court identification due to lack of present recollection."  Id. at 182, 778 N.Y.S.2d at 9 (internal quotation marks and citation omitted). Finally, the court found the petitioner's ineffective assistance of counsel claim to be unreviewable because it was based on matters outside the record on appeal.  The court went on to note that, to the extent that the record permitted review, the petitioner had received effective assistance of counsel.  Id. at 182, 778 N.Y.S.2d at 8-9.  The Appellate Division found the petitioner's remaining arguments —- including his due process claim regarding the failure to provide Mr. Yaqub with an interpreter —- to be unpreserved, but noted that were the those claims to be reviewed, they would be rejected.  Id. at 182, 778 N.Y.S.2d at 9.  On June 23, 2004, the New York Court of Appeals denied the petitioner's application for

leave to appeal.  <u>People v. Harden</u>, 3 N.Y.3d 641, 782 N.Y.S.2d 412 (2004).

While his direct appeal was pending, the petitioner filed a motion under CPL § 440.10 to vacate his conviction on the ground that he received ineffective assistance of trial counsel.  (Notice of Motion dated Jan. 24, 2004 and Affirmation of Michael E. Lipson dated Jan. 23, 2004 ("1st 440.10 Motion"), attached as Exh. H to Fleischmann Decl.; Addendum to Petition at 5th unnumbered page).  He argued that trial counsel's performance was deficient because he failed to cross-examine Mr. Yaqub using a Robbery Complaint Worksheet filled out by the officer who took Mr. Yaqub's initial statement.  In contrast to the testimony he gave at trial, the Worksheet indicates that Mr. Yaqub reported that the robbers reached into the cab to take his money.  (1st 440.10 Motion at 3, n.2).  The motion was summarily denied on March 22, 2004, and the petitioner did not seek leave to appeal the denial.[4]

Mr. Harden, proceeding <u>pro</u> <u>se</u>, then filed a second CPL § 440.10 motion on June 29, 2004.[5]  In it, he argued (1) that trial counsel was ineffective for failing to investigate his case

---

[4] A copy of the decision denying the CPL § 440.10 motion is not included in the record; however, the respondent points to a letter from an Assistant District Attorney referring to the motion having been denied.  (Letter of Madeleine Guilmain dated Sept. 27, 2004 ("Guilmain Letter"), attached as Exh. K to Fleischmann Decl., at 3).

[5] This motion is also missing from the current record.

adequately, failing to cross-examine Mr. Yaqub using the Robbery Complaint Worksheet, and failing to challenge the sufficiency of the evidence, and (2) that his guilt was not proved beyond a reasonable doubt. (Guilmain Letter at 3; Addendum to Petition at 7th unnumbered page). The motion was denied on August 5, 2004, and on September 29, 2004, the Appellate Division denied the petitioner's application for leave to appeal. (Notice of Motion for Leave to Appeal dated Aug. 23, 2004, and Certificate Denying Leave dated Sept. 29, 2004, attached as Exhs. J and L, respectively, to Fleischmann Decl.).

The petitioner filed a third 440.10 motion, again alleging ineffective assistance of trial counsel based on counsel's failure to make use of the Robbery Complaint Worksheet. (Notice of Motion to Renew dated May 12, 2005, and Affidavit of Paul Harden dated May 12, 2005 ("3rd 440.10 Motion"), attached as Exh. M to Fleischmann Decl.). While that motion was pending, the petitioner attempted to supplement it with an additional filing in which he argued that the trial court had erred by not providing Mr. Yaqub with an interpreter. (Notice of Motion to Supplement the Renew [sic] Motion dated July 21, 2005, and Affidavit of Paul Harden dated July 21, 2005 ("Supplemental 3rd 440.10 Motion") attached as Exh. N to Fleishmann Decl.). The court denied both motions on September 13, 2005, noting that no new facts had been presented on the first claim and that the second claim, which the court treated as a

fourth motion to vacate the judgment, was barred because it had been raised on direct appeal and rejected by the Appellate Division. (Decision and Order of Justice Eduardo Padro dated Sept. 13, 2005 ("Padro 9/13/05 Order"), attached as Exh. P to Fleishmann Decl. at 2-3). The court also noted that the second claim was barred because it could have been raised in previous post-conviction motions. (Padro 9/13/05 Order at 2). The petitioner sought leave to appeal the denial of the motion, and his application was denied on December 6, 2005. (Notice of Application for Leave to Appeal dated Sept. 28, 2005, and Certificate Denying Leave dated Dec. 6, 2005, attached as Exhs. Q and T, respectively, to Fleishmann Decl.).

Finally, the petitioner moved again on January 5, 2006 to vacate the judgement pursuant to CPL § 440.10. (Notice of Motion dated Jan. 5, 2006, and Affidavit of Paul Harden dated Jan. 5, 2006 ("4th 440.10 Motion"), attached as Exh. U to Fleishmann Decl.). In this motion, he argued that his trial counsel was ineffective for failing to investigate his history as a substance abuser. On May 16, 2006, the court denied the motion, finding that the petitioner could and should have raised the claim in a prior motion. (Decision and Order of Justice Eduardo Padro dated May 16, 2006 ("Padro 5/16/06 Order"), attached as Exh. X to Fleishmann Decl., at 4).

On October 4, 2005, the petitioner moved for a writ of error

coram nobis. (Notice of Motion dated Oct. 4, 2005, and Petition for Writ of Error Coram Nobis dated Oct. 6, 2005 ("1st Coram Nobis Pet."), attached as Exh. CC to Fleishmann Decl.).   In his application, he argued that his appellate counsel was ineffective for failing to preserve three issues for appeal: (1) that the evidence was insufficient, (2) that his trial counsel should have cross-examined Mr. Yaqub with the Robbery Complaint Worksheet, and (3) that Mr. Yaqub should have been provided with an interpreter. (1st Coram Nobis Pet. at 10-11).   Mr. Harden also argued that his appellate counsel was ineffective for failing to supply an adequate record to permit review of his speedy trial claim and for failing to argue that the petitioner's right to testify before the grand jury had been violated.[6]   The Appellate Division denied the coram nobis petition on February 21, 2006, <u>People v. Harden</u>, 2006 N.Y. App. Div. LEXIS 2231 (1st Dep't Feb. 21, 2006), and leave to appeal was denied on June 26, 2006.   <u>People v. Harden</u>, 7 N.Y.3d 756, 819 N.Y.S.2d 882 (2006).

The petitioner subsequently submitted a second coram nobis petition on September 12, 2006.  (Notice of Motion for Writ of Error Coram Nobis, Affirmation of Paul Harden dated Sept. 12, 2006,

---

[6] Though these claims do not appear in the copy of the coram nobis petition in the record, they were addressed by the State in its response.  (Affirmation of Mary C. Farrington in Opposition to Defendant's Application for a Writ of Error Coram Nobis, attached as Exh. DD to Fleishmann Decl., at 9-10).   These claims were presumably set forth on page 14 of the coram nobis petition, which is missing.

and Memorandum of Law ("2nd Coram Nobis Pet."), attached as Exh. II to Fleishmann Decl.). In this application, he expanded upon and re-argued the claims in his first coram nobis petition. In particular, the petitioner reiterated three claims that were raised in his first coram nobis petition but which he alleged he could not "properly present" because he did not have a copy of the trial transcript. (1st Coram Nobis Pet. at 15). Those claims included contentions that (1) his trial counsel failed to timely present the petitioner's request to testify before the grand jury; (2) the jury failed to adhere to the trial court's instructions on reasonable doubt; and (3) the trial court erred in failing to set aside the jury's verdict as contrary to the evidence. (2nd Coram Nobis Pet. at 6). The second coram nobis petition was treated by the Appellate Division as a motion to reargue the denial of his first coram nobis petition, and it was denied on January 16, 2007. People v. Harden, 2007 N.Y. App. Div. LEXIS 530 (1st Dep't Jan. 16, 2007). The petitioner did not appeal the denial, though he now asserts that he failed to do so because the Appellate Division did not notify him of its decision denying the petition. (Notice of Motion for a Stay of the Proceedings ("Motion for Stay") at 4-5).

Mr. Harden submitted the instant habeas corpus petition on April 22, 2007. He raises many of the same arguments that formed the basis of his appeals, CPL § 440.10 motions, and coram nobis petitions, namely that (1) the evidence of his guilt was

insufficient to support his conviction and the verdict was against the weight of the evidence; (2) his trial counsel was ineffective for failing to make use of the Robbery Complaint Worksheet; (3) his Due Process and Confrontation Clause rights were violated by the trial court's failure to have Mr. Yaqub testify through an interpreter; (4) the trial court erred in admitting testimony regarding the victim's prior identification of the petitioner; and (5) the petitioner was denied his right to a speedy trial. (Petition, ¶ 13 and Addendum at 4th unnumbered page). Mr. Harden's petition does not raise a claim regarding ineffective assistance of appellate counsel, apparently because the petitioner believed that his arguments had yet to be exhausted.[7]  Since the petitioner already exhausted some contentions regarding appellate counsel's performance in his first coram nobis petition, and because the respondent addresses those contentions, I will treat that claim as having been included in the petition.

The petitioner has now moved a second time to stay the proceedings to permit him to exhaust the arguments in his second

---

[7] The petitioner previously moved to stay the current petition so that he could exhaust those claims through his second coram nobis motion.  On July 30, 2007, I denied the request for a stay because the second coram nobis motion "appear[ed] to raise substantially the same claims as those that ha[d] already been rejected by the state courts.  To the extent that he raise[d] any new issues, he ha[d] been dilatory in pursuing them in the state courts, since they could have been asserted in the first coram nobis application." Harden v. LaClaire, No. 07 Civ. 4592, 2007 WL 2172606, at *1 (S.D.N.Y. July 30, 2007).

coram nobis petition. (Motion for Stay). In the alternative, he moves to amend his petition to add certain additional claims. (Amendment/Traverse Reply in Support of Writ of Habeas Corpus ("Pet. Reply") at 1).

<u>Discussion</u>

    A. <u>Motion to Stay</u>

The petitioner has moved again to stay resolution of this habeas corpus petition so that he may be afforded the opportunity to exhaust the claims raised in his second coram nobis motion and submit them for consideration in this proceeding. This motion essentially reargues the motion for a stay that I previously denied. As I noted in my prior order, "[a] stay should only be granted 'if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.'" <u>Harden</u>, 2007 WL 2172606, at *1 (quoting <u>Rhines v. Weber</u>, 544 U.S. 269, 278 (2005)). This time, however, Mr. Harden raises the additional contention that he was not served with a copy of the Appellate Division's denial of his second coram nobis. (Motion for Stay at 4). As a result, his time to appeal that denial should be equitably tolled pending receipt of the Appellate Division's decision, and he should be permitted to withdraw his current habeas petition, appeal the Appellate Division's ruling, and, once the Court of Appeals has made a

determination, re-submit his habeas petition with the currently unexhausted claims.  (Motion for Stay at 4-5).  The respondent argues that it was Mr. Harden's obligation to determine the disposition of his coram nobis motion before filing his habeas petition and that, in any event, his attempt to amend has been unduly delayed.  (Letter of Lisa Fleischmann dated Jan. 10, 2008 at 1-2).

The Second Circuit recently addressed a related question.  In Diaz v. Kelly, 515 F.3d 149 (2d Cir. 2008), the court ruled that a state court's failure to send notice after entry of an order necessary to exhaust state remedies should toll the time period for submission of a habeas petition under the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), 28 U.S.C. § 2244(d)(2). Id. at 155.  Other Circuits have reached similar conclusions.  Id. (citing Jenkins v. Johnson, 330 F.3d 1146, 1155 (9th Cir. 2003); Miller v. Collins, 305 F.3d 491, 495-96 (6th Cir. 2002); Knight v. Schofield, 292 F.3d 709, 711 (11th Cir. 2002); Woodward v. Williams, 263 F.3d 1135, 1142-43 (10th Cir. 2001); and Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000)).  Under the rule in Diaz, it is possible that the petitioner would be entitled to equitable tolling of his claims.  Here, however, a stay is  not necessary.  First, even if the petitioner were given the opportunity to exhaust the claims in his second coram nobis petition, leave to amend his habeas petition to add those claims

15

would still be "within the sound discretion of the court." John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994). Given the delay and prejudice that amending the petition at this juncture would cause, it is unlikely that leave would be granted. Second, and more importantly, a stay is unnecessary, as -- unlike the petition in Diaz -- Mr. Harden's habeas petition was timely submitted and the petitioner's second coram nobis petition contains no claim that was not presented in his first coram nobis petition. As a result, every claim raised by the petitioner in his second coram nobis petition is reviewed in this opinion, and staying the petition to allow Mr. Harden to exhaust his second coram nobis application would serve no meaningful purpose. Accordingly, further delay of these already-lengthy proceedings is not warranted.

B.  Motion to Amend

As an alternative to a stay, Mr. Harden seeks to amend his pleadings to add new claims regarding ineffective assistance of trial and appellate counsel as well as a double jeopardy claim. A habeas corpus petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Accordingly, the principles that apply to amendment of a complaint under Rule 15(a) of the Federal Rules of Civil Procedure apply with equal force to amendment of a habeas petition. See James v. Giles, 221 F.3d 1074, 1077-78 (9th Cir. 2000); Douglas v.

Walker, No. 99 Civ. 3626, 2000 WL 943509, at *1 (S.D.N.Y. July 7, 2000). Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a); see also Oneida Indian Nation of New York v. City of Sherill, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, 544 U.S. 197 (2005). Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend." John Hancock Mutual Life Insurance Co., 22 F.3d at 462; accord Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998). Regarding the use of this discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave should . . . be freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962) (internal quotation marks omitted).

Mr. Harden's motion to amend was significantly delayed, and granting it would result in prejudice the respondent. The initial petition in this action was filed in April 2007. In July 2007, I denied a motion for a stay by the petitioner who was seeking to exhaust many of the same claims he now seeks to add to his petition. Not until more than six months later did the petitioner submit the current motion to amend. In the meantime, the

respondent already answered the initial petition. Allowing amendment at this juncture would necessitate further investigation and another answer at the respondent's expense. After an appeal, four CPL § 440.10 motions, two coram nobis petitions, and the current habeas petition, it is hard to believe that the petitioner has not had adequate time to perfect his claims.

Moreover, the new claims advanced by the petitioner are futile. First, the petitioner contends that his appellate attorney was ineffective for failing to challenge his conviction for both robbery in the first degree and robbery in the second degree based on the same criminal conduct. He claims that robbery in the second degree is a lesser included offense relative to robbery in the first degree, and that his conviction on both counts would result in multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. (Amendment/Traverse Reply in Support of Writ of Habeas Corpus ("Reply") at 13-14).

Mr. Harden's argument is both unexhausted and procedurally defaulted: his trial counsel did not object to the charge at trial, nor did his appellate counsel appeal on this basis. Nevertheless, a claim may be deemed exhausted by a federal court for purposes of habeas review if it is clear that the state court would find the claim defaulted. Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000); Bossett v. Walker, 41

F.3d 825, 828-29 (2d Cir. 1994).  However, the same procedural default bars the court from reaching the merits of the claim.  See Bossett, 41 F.3d at 829.  Under New York law, an issue is only properly reserved for appeal if the litigant registers a protest at such time when the trial court still has the opportunity to change the challenged ruling or instruction.  CPL § 470.05(2); see also Glenn v. Bartlett, 98 F.3d 721, 724 n.2 (2d Cir. 1996) (citing People v. Cona, 49 N.Y.2d 26, 33-34, 424 N.Y.S.2d 146, 148-49 (1979)).  While certain double jeopardy arguments implicate the jurisdiction of the court and are thus reviewable notwithstanding a defendant's failure to object, a claim that multiple punishments were imposed for a single criminal act must be preserved.  See Belfer v. Cunningham, No. 05 Civ. 4900, 2007 U.S. Dist. LEXIS 52048, at *20-21 (S.D.N.Y. July 10, 2007); People v. Gonzalez, 99 N.Y.2d 76, 82-83, 751 N.Y.S.2d 830, 832-33 (2002).

    A federal habeas court may not review a prisoner's claim if that claim was procedurally defaulted in state court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Cause for procedural default requires a showing that "some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  A petitioner suffers actual prejudice if the outcome of the case

would likely have been different absent the alleged constitutional violation.  See Reed v. Ross, 468 U.S. 1, 12 (1984); Trottie v. Mantello, No. 98 Civ. 5581, 1999 WL 187202, at *4 (S.D.N.Y. April 6, 1999).

Alternatively, even if the petitioner is unable to establish cause and prejudice, his claim may be heard if he can show that failure to consider the claim would result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750; Murray, 477 U.S. at 495-96.  However, relief is only warranted in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent. Murray, 477 U.S. at 496; accord Spence, 219 F.3d at 170.

The petitioner appears to argue that trial counsel was ineffective for failing to raise an objection to the jury charge. (Reply at 12).  Ineffective assistance of trial counsel may constitute cause for a procedural default.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  However, this ground of ineffective assistance was raised for the first time in federal court.  Therefore, the petitioner's ineffective assistance claim is also defaulted and cannot serve as cause for the default of his double jeopardy claim.  See id. at 450-51.  Furthermore, New York courts have consistently held that the crime of robbery in the second degree as proscribed in CPL § 160.10(1), is not a lesser included offense of the crime of robbery in the first degree in CPL

20

§ 160.15(3).  See People v. Acevedo, 40 N.Y.2d 701, 706, 89 N.Y.S.2d 811, 845 (1976)("Our courts have read these two statutes as countenancing the coexistence of the two counts, noting that the proof of 'aid' and 'actual presence' of the associate under section 160.10 are not identical with any element that must be proved under section 160.15."); People v. McFadden, 100 A.D.2d 520, 520, 473 N.Y.S.2d 210, 211 (2d Dep't 1984).  Thus, the underlying claim lacks merit, trial counsel was not ineffective for failing to object, and appellate counsel was not ineffective for failing to argue trial counsel's ineffectiveness on this score.

The rest of the petitioner's proposed amendment fares no better.  He argues that appellate counsel was ineffective for a variety of alleged shortcomings, including (1) the failure to include certain claims on appeal (Reply at 3, 5), (2) the failure to include certain claims in his leave application to the Court of Appeals (Reply at 3-6), and (3) the failure to argue that trial counsel was ineffective for neglecting to preserve certain claims (Reply at 4-8).  To the extent these arguments are intended to show cause for the petitioner's procedural default, I will treat them as answers to the respondent's arguments and discuss them in the sections pertaining to each individual claim.  To the extent that they are intended to raise new ineffective assistance of appellate counsel claims, they are unexhausted and procedurally defaulted. The petitioner has made no effort to establish cause and prejudice,

nor is there any evidence in the record that suggests that he could do so. Consequently, any new claims regarding ineffective assistance of trial counsel would be futile. Furthermore, as described below, it is clear that neither trial counsel's nor appellate counsel's overall performance was ineffective; thus the underlying claims lack merit. Accordingly, the petitioner's motion to amend is denied.

B. Insufficient Evidence[8]

Mr. Harden contends that the evidence presented at trial was insufficient as a matter of law to prove his guilt beyond a reasonable doubt for first degree robbery. Trial counsel failed to

---

[8] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and of mixed questions of law and fact.  See Thompson v. Keohane, 516 U.S. 99, 107-12 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002).  Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The AEDPA standard applies to this case since Mr. Harden filed his petition after the Act's effective date.  See Brown, 283 F.3d at 498 n.2.  However, where, as here, the petitioner's claims fail under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis.  Cf. Kruelski v. Connecticut Superior Court for the Judicial District of Danbury, 316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts should assess first whether state court's ruling was erroneous under the "correct interpretation" of federal law at issue, then whether the ruling was unreasonable).

raise an objection at the close of evidence. However, since the claim was assessed on the merits by the Appellate Division, it is eligible for habeas review. See 28 U.S.C. § 2254.

The standard for habeas corpus review of such claims is well established. There is a "very heavy burden placed upon a defendant challenging the sufficiency of the evidence underlying his conviction." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995)(internal quotation marks and citations omitted). "'The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (quoting Herrera v. Collins, 506 U.S. 390, 401 (1993)). The Court must "decide whether the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" Bossett, 41 F.3d at 830 (quoting Mapp v. Warden, New York State Correctional Institute for Women, 531 F.2d 1167, 1173 n.8 (2d Cir. 1976)).

A federal court reviewing a sufficiency of evidence claim does not make an independent determination as to whether the evidence demonstrates guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Rather, the habeas court "stands in the shoes of the state trial court." Mallette v. Scully, 752 F.2d 26, 31 (2d Cir. 1984). In so doing, it must construe the evidence in the light most favorable to the prosecution, and defer to the

jury's resolution of any conflicts in the testimony and to its assessment of the credibility of witnesses.  Jackson, 443 U.S. at 319; see also Herrera, 506 U.S. at 401-02 (noting that court should ask only whether decision to convict was rational, not whether it was correct).  "[A]s long as any competent evidence went to the fact-finders from which they could infer guilt beyond a reasonable doubt, the conviction will stand." Martin v. Scully, 748 F. Supp. 159, 164 (S.D.N.Y. 1990) (quoting McShall v. Henderson, 526 F. Supp. 158, 161 (S.D.N.Y. 1981)).

"When it considers the sufficiency of the evidence of a state conviction, 'a federal court must look to state law to determine the elements of the crime.'" Fama v. Commissioner of Correctional Services, 235 F.3d 804, 811 (2d Cir. 2000) (quoting Quartararo, 186 F.3d at 97).  Under New York Penal Law § 160.15, a person is guilty of first degree robbery when he (1) forcibly steals property and (2) in the course of the commission of the crime, displays a firearm or what appears to be a firearm or uses or threatens the use of a dangerous instrument.  A person is guilty of second degree robbery when he "forcibly steals property," and was "aided by another person actually present" N.Y. Penal Law § 160.10.

The petitioner argues that the evidence was not sufficient to support his conviction because the testimony of the only eyewitness, Mr. Yaqub, was "confusing and riddled with serious inconsistencies."  (Pet. App. Br. at 18).  Among these

inconsistencies were Mr. Yaqub's initial description of his assailant as wearing "all black" whereas Mr. Harden was wearing a red, white, and blue jacket when he was apprehended; Mr. Yaqub's failure to describe any of Mr. Harden's identifying features, including a prominent bump on his forehead; Mr. Yaqub's description on different occasions of the robbery as taking five, six, 15 or 20 minutes; and, most notably, Mr. Yaqub's misidentification of a spectator in the courtroom as his assailant. (Pet. App. Br. at 18-21). The petitioner further contends that Mr. Yaqub's testimony that he got out of his car to help a never-identified elderly woman to her doorstep in a high-crime neighborhood in the middle of the night while carrying over $300 in cash defies belief. (Pet. App. Br. at 21). Finally, the petitioner points out that no money was found on his person when the police searched him. (Pet. App. Br. at 20).

Some of these supposed inconsistencies are relatively easy to explain. For instance, a blue jacket with some red and white detail and blue pants with white piping could have appeared black in the dark of the night, and a bump on the forehead may have escaped notice. The fact that no money was found on the petitioner is not surprising since Mr. Yaqub was robbed by three men, two of whom were never apprehended. Mr. Yaqub's mis-identification of a spectator is more troubling; however, a significant amount of time had passed between the robbery and the trial. In contrast, Mr.

Yaqub's prior identification of the petitioner was made immediatly after the robbery.  It would have been reasonable for the jury to consider the initial identification to be independently reliable.

Moreover, the petitioner's own statements were inconsistent. He told police that he had been visiting his girlfriend in apartment 2-A at 518 West 148th Street, but upon inspecting the building, the police found that no such apartment existed.  He also told police that at the time they stopped him -- around 4:00 a.m. -- he was on his way to a 9:00 a.m. messenger shift.

Ultimately, a "habeas court must defer to the assessments of the . . . credibility of the witnesses that were made by the jury and may not substitute its view . . . for that of the jury[.]" Frazier v. New York, 187 F. Supp. 2d 102, 109-10 (S.D.N.Y. 2002) (citing Herrera, 506 U.S. at 401-02).  Even where a witness has been found to be unreliable in some respects, the jury is still entitled to credit other parts of his testimony. See United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994) ("Where there are conflicts in the testimony, we must defer to the jury's resolution of [them]."); United States v. Projansky, 465 F.2d 123, 136 & n.24 (2d Cir. 1972)(jury was properly instructed to weigh credibility of witness at trial, despite his having admitted to committing perjury before grand jury).  The jury in this case apparently concluded that Mr. Yaqub's testimony, notwithstanding its internal inconsistencies, was more reliable than Mr. Harden's.

Furthermore, there was adequate evidence upon which a rational juror could base a guilty verdict.    As the Appellate Division noted, "[t]he victim had ample opportunity to observe the robbers, the police found defendant in close spatial and temporal proximity to the crime with the knife in his pocket, and the record reveals a reasonable explanation for the differing descriptions of defendant's clothing." Harden, 6 A.D.3d at 182, 778 N.Y.S.2d at 8. In short, the evidence presented at trial was sufficient to convict the petitioner, and this claim should be rejected.[9]

C. Failure to Use an Interpreter

Mr. Harden contends that the failure to provide an interpreter for Mr. Yaqub deprived him of due process because he was unable to effectively cross-examine the witness and violated his rights under the Confrontation Clause of the Sixth Amendment by preventing him

---

[9] The petitioner also includes a claim that the verdict was against the weight of the evidence in the table of contents from his appellate brief attached to his petition.  To the extent that he intends to assert such a claim here, it is well-settled that a weight of the evidence claim is not cognizable on federal habeas review.  See Lemons v. Parrott, No. 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[A federal court] has no authority to review a weight of the evidence argument because it is a state law claim."); accord Rodriguez v. Senkowski, No. 03 Civ. 3314, 2004 WL 503451, at *26 (S.D.N.Y. March 15, 2004); McBride v. Senkowski, No. 98 Civ. 8663, 2002 WL 523275, at *4 n. 2 (S.D.N.Y. April 8, 2002); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); Peralta v. Bintz, No. 00 Civ. 8935, 2001 WL 800071, at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction. Because [petitioner] raises no cognizable federal issue, his petition must be denied.)."  Accordingly, any such claim should be rejected.

from confronting a witness against him.  (Pet. App. Br. at 26-28).

The petitioner conceded in his appellate brief that this claim was defaulted, as trial counsel did not object during trial to the failure to use an interpreter.  (Pet. App. Br. at 28). Accordingly, the Appellate Division found Mr. Harden's claim unpreserved.  Harden, 6 A.D.3d at 182, 778 N.Y.S.2d at 9.

Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman, 501 U.S. at 729).  A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'"  Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)).

As discussed above, New York's contemporaneous objection rule requires litigants to preserve arguments for appeal by objecting on the same grounds during the trial below.  CPL § 470.05(2); see also Glenn, 98 F.3d at 724 n.2.  In Garvey v. Duncan, 485 F.3d 709 (2d Cir. 2007), the Second Circuit held that CPL § 470.05(2) is firmly established and regularly followed, such that a state court ruling that a constitutional claim is unpreserved for failure to comply with the contemporaneous objection rule bars federal review of the

28

merits of the claim. See also Wainwright v. Sykes, 433 U.S. 72, 82-86 (1977); Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999); Peterson v. Scully, 896 F.2d 661, 663 (2d Cir. 1990). Garvey identified three factors for evaluating whether the state's application of this procedural bar is reasonable: (1) whether perfect compliance with the state rule would have changed the outcome of the trial court's decision; (2) whether state case law indicates that compliance with the rule was required in the specific circumstances; and (3) whether the petitioner substantially complied with the rule given the realities of the trial. 485 F.3d at 714 (quoting Cotto, 331 F.3d at 240).

In this case, the Appellate Division's application of the procedural bar was reasonable. First, compliance with the contemporaneous objection rule would have had an impact on the trial. Regardless of what the court's final determination might have been, had trial counsel raised an objection, the court could have at least considered whether to appoint an interpreter. Second, as discussed above, New York law requires a specific, contemporaneous objection for an argument to be preserved for appellate review. See People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 175 (1995). Finally, the petitioner did not "substantially comply" with the rule, as he raised no objection at all. Accordingly, application of the state rule was reasonable, and the procedural bar constitutes an independent and adequate

state ground for the Appellate Division's holding. Mr. Harden's claim is therefore procedurally defaulted.[10]

As described above, a federal habeas court may not review a claim that was procedurally defaulted in state court unless the petitioner can establish cause for the default and actual prejudice resulting from the alleged constitutional violation, or that failure to consider the claim would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. Mr. Harden argued in state court that trial counsel was ineffective for failing to request an interpreter for Mr. Yaqub. (Supplemental 3rd 440.10 Motion). However, ineffective assistance of counsel cannot constitute cause for the petitioner's default here because this particular ground of inefficient assistance was itself defaulted, as it should have been raised in an earlier motion to vacate. (Padro 9/13/05 Order at 2). See Edwards, 529 U.S. at 450-51. Mr. Harden has proffered no other explanation for the failure to raise an objection regarding the use of an interpreter during trial. Nor is this an "extraordinary case" that has "resulted in the

---

[10] Though the Appellate Division summarily discussed the merits of the claim in an alternative holding, this does not render the claim reviewable in a habeas corpus proceeding. "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Glenn, 98 F.3d at 724 (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding.").

conviction of one who is actually innocent." Murray, 477 U.S. at 496. Consequently, this Court cannot review the claim.

    D. Identification Testimony

    Mr. Harden claims that the admission of testimony by Officer Mary O'Donnell regarding the victim's prior identification of the petitioner violated his due process rights.[11]  To establish a due process violation, Mr. Harden must first establish that the admission of the challenged evidence violated a state evidentiary rule.  See Roman v. Filion, No. 04 Civ. 8022, 2005 WL 1383167, at *26 & n.46 (S.D.N.Y. June 10, 2005); Williams v. Walker, No. 00-CV-5912, 2001 WL 1352105, at *3 (E.D.N.Y. Oct. 31, 2001); Dey v. Scully, 952 F. Supp 957, 969 (E.D.N.Y. 1997).  He contends that admission of the prior identification testimony did not conform to the requirements of CPL § 60.25.  That provision allows for testimony by a witness or third party regarding prior identification where:

---

[11] This claim is unexhausted because the petitioner failed to include it in his leave application to the Court of Appeals. (Application for Certificate Granting Leave to Appeal ("Leave Application"), dated April 21, 2004, attached as Exh. E to Fleischmann Decl.).  As discussed above, the court may deem the claim constructively exhausted if further state court review would be barred by procedural default.  Gray, 518 U.S. at 161-62. Because any attempt by Mr. Harden to raise the claim on collateral review would be futile, see CPL § 440.10(2(a), his claim may be deemed exhausted.  However, even if his claim were unexhausted, this Court may reach the claim on the merits to deny it.  See 28 U.S.C. § 2254(b)(2); Ojeda v. Artuz, No. 96 Civ. 5900, 1997 WL 283398, at *3 n.5 (S.D.N.Y. May 29, 1997).  As set forth in the discussion below, this claim is without merit and should be denied.

31

> (i) [The witness] observed the person claimed by the
> people to be the defendant either at the time and place
> of the commission of the offense or upon some other
> occasion relevant to the case; and
>
> (ii) On a subsequent occasion he observed, under
> circumstances consistent with such rights as an accused
> person may derive under the constitution of this state or
> of the United States, a person whom he recognized as the
> same person whom he had observed on the first or
> incriminating occasion; and
>
> (iii) He is unable at the proceeding to state, on the
> basis of present recollection, whether or not the
> defendant is the person in question.

CPL § 60.25(1)(a). The petitioner contends that the introduction

of Officer O'Donnell's testimony violated CPL § 60.25 because the

third requirement had not been met: Mr. Yaqub's "failure to

identify [the petitioner] in court was not demonstratively and

unambiguously attributable to a lack of recollection." (Pet. App.

Br. at 30). However, the record suggests otherwise. After Mr.

Yaqub's initial identification of a member of the audience as his

attacker, the prosecutor probed further, asking:

> Q. [T]oday, a year later, do you have as clear a memory
> of what the person's face looked like?
>
> A. No . . . .
>
> Q. Do you have a present recollection of who that person
> is as you sit here today?
>
> A. No.

(Tr. at 594-95). On this basis, the court later allowed Officer

O'Donnell to testify as to the prior identification, ruling that

"[Mr. Yaqub] really is unable, based upon his present recollection,

to say whether or not the defendant is the person." (Tr. at 658). The court also stated that "the record [] clearly supports the inference that even if . . . [Mr. Yaqub] had [] been directly asked whether [Mr. Harden] was the perpetrator," he would not be able to answer. (Tr. at 659). The petitioner argues that such an "inference" is insufficient to permit prior identification testimony under CPL § 60.25. (Pet. App. Br. at 32-33). But New York courts have repeatedly held that the requisite showing under § 60.25 may be by "inference that the victim was unable to make an in-court identification due to lack of present recollection," People v. Fermin, 272 A.D.2d 247, 247, 709 N.Y.S.2d 397, 397 (1st Dep't 2000), and that this inference may be based on "the record as a whole," People v. Sierra, 276 A.D.2d 274, 274, 713 N.Y.S.2d 871, 871 (1st Dep't 2000). Moreover, the Court of Appeals has held that "[f]or purposes of permitting testimony of a prior identification pursuant to [CPL § 60.25], a determination by a trial court that a witness does not possess sufficient present recollection to permit an in-court identification of the defendant must be accorded the same effect as a statement by the witness that he cannot now identify the defendant." People v. Cwikla, 46 N.Y.2d 434, 444, 414 N.Y.S.2d 102, 108 (1979). Thus, the trial court's determination here that Mr. Yaqub had no present recollection, even if based on an "inference," was adequate to support its evidentiary ruling.

Even if Mr. Harden could demonstrate that admission of the

prior identification testimony violated CPL § 60.25, a claim which both the trial court and the Appellate Division found unpersuasive, he cannot show that it "so infused the trial with unfairness as to deny due process of law". Smith v. Conway, No. 06 Civ. 7674, 2007 U.S. Dist. LEXIS 89579, at *19 (S.D.N.Y. Dec. 6, 2007)(quoting Estelle v. McGuire, 502 U.S. 62, 75 (1991)); see also Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988) ("[E]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where the petitioner can show that the error deprived him of a fundamentally fair trial.")(quoting Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983)) (emphasis in original).     Even without Officer O'Donnell's testimony, the jury would have heard Mr. Yaqub's testimony that the police stopped a man he recognized at the time as his attacker near the scene of the crime along with testimony by other officers that it was the petitioner who was stopped.    (Tr. at 450-51, 596-98). They also would have heard that the police recovered from the petitioner's back pocket a knife identified by Mr. Yaqub as the weapon his attacker wielded.  (Tr. at 451-52, 599-600).  Thus, the jury's consideration of the additional identification evidence was not "a material basis for his conviction" and it did not render the proceeding fundamentally unfair.  Dunnigan v. Keane, 137 F.3d 117, 125-27 (2d Cir. 1998).

34

E. <u>Speedy Trial Claim</u>

The petitioner claims that he was denied his right to a speedy trial. He points to CPL § 30.30, which provides that a defendant facing felony charges must be tried within six months of the commencement of the criminal action against him, not counting time that is excluded for the reasons specified in the statute. CPL § 30.30(1)(a), (4). However, such a claim is not cognizable in a habeas corpus proceeding. "[A] [federal] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); <u>Ayala v. Leonardo</u>, 20 F.3d 83, 91 (2d Cir. 1994).

To the extent that the petitioner attempts to raise a federal speedy trial claim, it is unexhausted, as he failed to do present such a claim in constitutional terms on appeal and did not include the claim at all in his leave application to the Court of Appeals. (Pet. App. Br. at 34; Leave Application). "It is well settled that petitioner who raises only a statutory speedy trial claim pursuant to [CPL § 30.30] has not invoked the federal constitution and [] has not exhausted a federal claim." <u>Delvalle v. Sabourin</u>, No. 00 Civ. 3302, 2002 WL 1000968, at *3 (S.D.N.Y. May 16, 2002). Nevertheless, as discussed above, a federal court may deem a claim

exhausted where it is clear that a state court would find the claim procedurally barred. <u>Gray</u>, 518 U.S. at 161-62; <u>Spence</u>, 219 F.3d at 170; <u>Bossett</u>, 41 F.3d at 828-29. New York law provides for only a single application for direct review. <u>See</u> <u>Spence</u>, 219 F.3d at 170.[12] A defendant who fails to press an available claim on direct appeal is precluded from raising it on collateral review. CPL § 440.10(2)(c). Thus, Mr. Harden would not be able to return to state court to argue his claim on federal constitutional grounds. Furthermore, he has made no effort to demonstrate cause or prejudice with respect to defaulting on the constitutional claim.[13] Nor has he shown any "fundamental miscarriage of justice" resulting

---

[12] The Court in <u>Spence</u> relied on New York Court of Appeals Rule 500.10(a) (1999). 219 F.3d at 170. The rule has since been amended, and criminal leave applications are now addressed in Rule 500.20. While this section does not specifically state that there may be only one application for appeal, <u>see</u> N.Y. R. Ct. § 500.20, such a restriction may be inferred. Both Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted. Additionally, Rule 500.20(d) states that a request for reargument or reconsideration may not raise any new points, implying that a wholly new request for leave to appeal would be impermissible. <u>See generally</u> <u>Roa v. Portuondo</u>, No. 02 Civ. 6116, 2007 U.S. Dist. LEXIS 74387, at *32-33 (S.D.N.Y. Oct. 5, 2007)(declining to review issue that petitioner had failed to raise on direct appeal); <u>Murray v. Williams</u>, No. 05 Civ. 9438, 2007 WL 430419, at *8 (S.D.N.Y. Feb. 8, 2007)(same); <u>Oquendo v. Senkowski</u>, 452 F. Supp. 2d 359, 368 (S.D.N.Y. 2006) (same).

[13] Mr. Harden argues that the failure to include the relevant portions of the transcript with his appeal was a result of ineffective assistance of appellate counsel. However, this argument is made with respect to his state law speedy trial claim; as with the rest of his many petitions and appeals, he makes no mention of a constitutional speedy trial claim. (Pet. Reply at 3).

from his conviction.  <u>Coleman</u>, 501 U.S. at 750.  Accordingly, any constitutional speedy trial claim is procedurally barred and not eligible for review by this Court.

F. <u>Ineffective Assistance of Trial Counsel</u>

The petitioner has submitted numerous claims throughout the course of his many post-trial motions challenging the effectiveness of his trial counsel.  It is unclear which of these, if any, he intends to include in this petition.  At any rate, only one such claim -- that counsel was ineffective in failing to use a Robbery Complaint Worksheet to cross-examine Mr. Yaqub -- was ever addressed on the merits by the state courts and thus preserved for habeas review.[14]  Mr. Harden's claims that counsel was ineffective for failing to challenge the introduction of testimony regarding Mr. Yaqub's prior identification on Confrontation Clause grounds (Pet. Reply at 3) and for failing to raise a double jeopardy objection to the jury charge (Pet. Reply at 3) are unexhausted and procedurally defaulted.  His claims that trial counsel was ineffective for failing to adequately investigate his case (Guilmain Letter at 3), challenge the sufficiency of the evidence (Guilmain Letter at 3), request an interpreter for Mr. Yaqub

_____

[14] While the Appellate Division found the claim unreviewable on direct appeal because the Robbery Complaint Worksheet was not included in the record, <u>Harden</u>, 6 A.D.3d at 182, 778 N.Y.S.2d at 9, the claim was addressed on the merits by the New York State Supreme Court in ruling on the petitioner's first CPL § 440.10 motion. Therefore, habeas review is appropriate.

(Supplemental 3rd 440.10 Motion), or investigate Mr. Harden's history as a drug abuser (4th 440.10 Motion) were rejected by the state courts as procedurally defaulted, and were therefore disposed of on independent and adequate state grounds.

### 1.    Unexhausted Claims

The petitioner's claims that his trial counsel was ineffective for failing to raise Confrontation Clause and double jeopardy challenges are unexhausted.  As described above, a federal court may deem such claims exhausted if it is clear that the state court would find them procedurally defaulted.  Gray, 518 U.S. at 161-62. Having raised these arguments for the first time in his Reply, Mr. Harden would now be precluded from returning to state court to argue them.  Likewise, they cannot serve as cause for the default of the petitioner's other constitutional claims.  See Edwards, 529 U.S. at 450-51.  Mr. Harden has made no showing of cause or prejudice with respect to his failure to raise the ineffective assistance claims in an appropriate forum in state court. Accordingly, the claims are procedurally barred, and this Court cannot review them.

### 2.    Procedurally Barred Claims

Mr. Harden's remaining claims regarding ineffective assistance of counsel were rejected by the New York State Supreme Court because they could have been filed in a previous CPL § 440.10 motion but were not.  (Guilmain Letter at 3;  Padro 9/13/05 Order

at 2; Padro 5/16/06 Order at 2). As discussed above, federal habeas review is prohibited if a state court rests its judgment on an independent and adequate state law ground, including the failure to comply with a state procedural rule. Cotto, 331 F.3d at 238; Estwick v. Walker, No. 01 Civ. 2174, 2004 WL 1151581, at *5 (S.D.N.Y. May 24, 2004).

The petitioner cannot demonstrate cause and prejudice for his default. To the extent that he attributes his failure to raise these claims to ineffective assistance of appellate counsel, that claim is itself procedurally defaulted. See Edwards, 529 U.S. at 450-51. Nor can he show a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. Consequently, this Court cannot review these claims.

### 3. Robbery Complaint Worksheet

The petitioner claims that counsel was ineffective because he did not cross-examine Mr. Yaqub with a police report created soon after the robbery.[15] The information recorded in the report largely comports with the testimony provided by Mr. Yaqub at trial; however, the report states that the perpetrators reached into the

---

[15] The Robbery Complaint Worksheet, technically known as a DD-5 report, was apparently dated five days after the robbery. It is unclear whether Mr. Yaqub was interviewed then or whether his interview was only memorialized at that time. The report is not part of the record for this petition, but the text of the report is replicated in the prosecutor's response to the petitioner's first CPL § 440.10 motion. (Affirmation of David Lanscher in Response to Defendant's Motion to Vacate Judgment dated Feb. 23, 2004, attached as Exh. I to Fleischmann Decl., at 20; Resp. Memo. at 31 n.10).

cab and put a knife to Mr. Yaqub's throat, while at trial Mr. Yaqub testified that he was accosted while walking back to his cab, thrown onto the trunk of the car, and robbed. (First 440.10 Motion at 2-3; Resp. Memo. at 31). The petitioner argues that the failure of counsel to present these "two starkly different and logically irreconcilable versions of the robbery incident" constituted ineffective assistance of counsel. (First 440.10 Motion at 2).

In order to make out an ineffective assistance of counsel claim, the petitioner must demonstrate that (1) his counsel's performance was deficient, and (2) the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); accord Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). In assessing whether an attorney's performance was deficient, a reviewing court must determine whether his conduct "fell below an objective standard of reasonableness," given the facts and circumstances of the particular case. Strickland, 466 U.S. at 688. The court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The "prejudice" prong of the Strickland test requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," id. at 687, and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The petitioner cannot meet that burden here.  The record shows that Mr. Harden's trial counsel mounted a vigorous defense.  He moved to suppress evidence and to dismiss the indictment on speedy trial grounds, he presented cogent opening and closing statements, and he thoroughly cross-examined the prosecution's witnesses.  In particular, he effectively cross-examined Mr. Yaqub, pressing him on  his in-court misidentification of his attacker (Tr. at 609-12, 635), the fact that the woman he supposedly dropped off was never identified (Tr. at 628-29), and the overall implausibility of his story.  (Tr. at 620-29).  Counsel also re-crossed Mr. Yaqub, pressing him on his vacillating description of his attacker's apparel.  (Tr. at 649-52).  The fact that counsel did not use the police report to cross-examine Mr. Yaqub may well have reflected a strategic decision, as there were many other fruitful areas for cross-examination.

Moreover, the version of the robbery related by Mr. Yaqub in which he was robbed while walking back to his cab had remained consistent throughout various interviews with police and at trial; the only version that deviated from this account was recorded on the Robbery Complaint Worksheet, which was brief, secondhand, and possibly jotted down in haste.  Counsel may have decided that this avenue of cross-examination was simply not worth pursuing.  A habeas court should not "second-guess trial counsel's defense strategy simply because the chosen strategy has failed."  United

States v. DiTommaso, 817 F.2d 201, 216 (2d Cir. 1987); see also Strickland, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Even if counsel's decision not to use the Robbery Complaint Worksheet on cross-examination was a strategic error, the relevant inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also United States v. Cronic, 466 U.S. 648, 657-58 (1984). "[J]udged in context and without the benefit of hindsight, trial counsel's performance as a whole did not constitute ineffective assistance." Smalls v. McGinnis, No. 04 Civ. 0301, 2004 WL 1774578, at *19 (S.D.N.Y. Aug. 10, 2004).

    G. Ineffective Assistance of Appellate Counsel

    The petitioner also contends that his appellate counsel was ineffective[16] for (1) failing to preserve the following issues for appellate review:  insufficiency of the evidence, the failure of trial counsel to utilize the Robbery Complaint Worksheet, and the failure of the trial court to provide an interpreter for Mr. Yaqub;

---

[16] Though the ineffective assistance of appellate counsel claim is not clearly articulated in the petition, the petitioner has evinced an intent to raise it by, among other things, filing a coram nobis petition containing the claim and moving this Court to stay the current petition so that he might exhaust a second coram nobis petition expanding on the claim. The respondent consents to treating the claim as part of the petition to the extent that if was raised in his first coram nobis petition. (Resp. Memo. at 46).

(2) for failing to submit the relevant portions of the record to permit review of his speedy trial act claim; and (3) for failing to argue that the petitioner's right to testify before the grand jury had been violated.  (1st Coram Nobis Pet. at 10-15).[17]

The two-prong Strickland analysis applies equally to the performance of appellate counsel.  See Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Lawrence v. Artuz, 91 F. Supp. 2d 528, 539 (E.D.N.Y. 2000).  Under Strickland, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690.  Accordingly, a reviewing court should not second guess

---

[17] In addition, the petitioner noted in his coram nobis petition that he was unable to "properly present" three additional claims because of his inability to obtain a copy of the trial transcript. (1st Coram Nobis Pet. at 15).  These claims are: (1) that his trial counsel failed to timely present the petitioner's request to testify before the grand jury; (2) that the jury failed to adhere to the trial court's instructions on reasonable doubt; and (3) that the trial court failed to set aside the jury's verdict as contrary to the evidence.  In his second coram nobis petition, the petitioner characterizes these claims as "stronger issues . . . which appellate counsel failed to raise." (2nd Coram Nobis Pet. at 6). To the extent that these claims can be assessed, they also lack merit and certainly do not establish ineffective assistance of appellate counsel.  Appellate counsel did raise a weight of the evidence claim, which was rejected.  There is no indication in the record that the jury failed to adhere to instructions on reasonable doubt; indeed, this claim is merely a restatement of the legal sufficiency argument that was rejected on appeal and again here. Finally, the record does not permit review of the claim regarding the grand jury notice, and as such appellate counsel can hardly be faulted for failing to raise it on appeal given the many other claims that he did raise.

reasonable professional judgments made by appellate counsel.  See Jones v. Barnes, 463 U.S. 745, 754 (1983); McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999); Mayo, 13 F.3d at 533; Avincola v. Stinson, 60 F. Supp. 2d 133, 148 (S.D.N.Y. 1999).

It is well established that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant." Evitts v. Lucey, 469 U.S. 387, 394 (1985); see also Jones, 463 U.S. at 754 n.7; Jameson v. Coughlin, 22 F.3d 427, 429 (2d Cir. 1994).  However, "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533.  In order to satisfy the second prong of the Strickland test, "a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." Id. at 534 (internal quotation marks and citation omitted).

### 1.  Failure to Preserve Claims

The petitioner first contends that appellate counsel was ineffective for failing to preserve claims for review.  But trial error can only be preserved with a contemporaneous objection.  CPL § 470.05(2); see also  Glenn, 98 F.3d at 724 n.2.  Such an objection "must specifically focus on the alleged error." Garvey, 485 F.3d at 714-15 (citing Gray, 86 N.Y.2d at 19, 629 N.Y.S.2d at

175).  Therefore, the claims regarding the sufficiency of the evidence and the failure to provide an interpreter for Mr. Yaqub could only have been preserved by trial counsel, and the failure to include these claims in the first CPL § 440.10 motion was immaterial.  (1st Coram Nobis Pet. at 12).  Furthermore, despite trial counsel's failure to preserve these claims, appellate counsel asked the Appellate Division to review them in the interests of justice (Pet. App. Br. at 18, 28); <u>see</u> CPL § 470.15(3)(c), (6), and the Appellate Division reached the merits of the legal sufficiency claim.  <u>Harden</u>, 6 A.D.3d at 181-82, 778 N.Y.S.2d at 8.  As for the petitioner's claim regarding trial counsel's error in not utilizing the Robbery Complaint Worksheet, appellate counsel appropriately raised it in a CPL § 440.10 motion.  (1st 440.10 Motion).  The petitioner seems to complain that appellate counsel delayed unnecessarily in filing the 440.10 motion (1st Coram Nobis Pet. at 12), but since the motion was still adjudicated on the merits, the petitioner is unable to show any prejudice resulting from the delay.

    2.  <u>Failure to Submit Transcript</u>

The petitioner also claims that appellate counsel was ineffective for failing to include the appropriate sections of the transcript that would have facilitated appellate review of his CPL § 30.30 speedy trial act claim.  The petitioner was not prejudiced by the absence of these portions, however, as the Appellate

Division assessed the speedy trial claim on the merits. <u>Harden</u>, 6 A.D.3d at 182, 778 N.Y.S.2d at 8-9.

### 3.    <u>Failure to Argue Grand Jury Claim</u>

Appellate counsel's decision not to argue that the petitioner was denied his right to testify before the grand jury was presumably based on the fact that the petitioner failed to serve timely notice of his intent to testify before the grand jury, as he himself concedes. (1st Coram Nobis Pet. at 14-15). Consequently, such a claim would have failed on appeal. <u>See</u> CPL § 190.50(5)(a)(defendant who wishes to testify before grand jury must serve written notice).

### 4.    <u>Appellate Counsel's Performance</u>

The specific contentions of ineffective assistance of appellate counsel lack merit. An overall review of appellate counsel's work shows that he submitted a reasonably cogent, well-argued 39-page memorandum of law, raising five claims on appeal and supporting each. He requested that claims not preserved for review be reached in the interests of justice, which the Appellate Division did with regard to the speedy trial and sufficiency of the evidence claims, neither of which had been preserved. <u>Harden</u>, 6 A.D.3d at 181-82, 778 N.Y.S.2d at 8-9. In addition, he submitted a CPL § 440.10 motion arguing ineffective assistance of trial counsel based on evidence outside of the record. It cannot be said that appellate counsel's conduct "fell below an objective standard

46

of reasonableness," <u>Strickland</u>, 466 U.S. at 688, and this claim should therefore be denied.

Conclusion

For the reasons set forth above, I recommend that Mr. Harden's motion to stay these proceedings and to amend his petition be denied and that his petition for a writ of habeas corpus be dismissed.   Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation.   Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Laura T. Swain, Room 755, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.   Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
March 26, 2008

Copies mailed this date to:

Paul Harden
01-A-2708
Clinton Correctional Facility
P.O. Box 2002
Dannemora, New York 12929

Ashlyn Dannelly, Esq.
Lisa Fleischmann, Esq.
Assistant Attorneys General
120 Broadway
New York, New York 10271